**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CLINTON J. DADE,** | : | |
| | : | **Case No. 2:17-cv-552** |
| **Plaintiff,** | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **FRANKLIN COUNTY, OHIO,** *et al,* | : | **Magistrate Judge Chelsey M. Vascura** |
| | : | |
| **Defendants.** | : | |

<u>**OPINION & ORDER**</u>

This matter comes before the Court on Defendants' Motion for Summary Judgment. (ECF No. 21). For the reasons below, there remains no genuine dispute of material facts. Defendants' Motion is **GRANTED**.

**I.      Background**

**A.  Procedural Background**

Plaintiff Clinton J. Dade was employed by the Franklin County Sheriff's Office from September 2015 to August 2016. After he was fired, Plaintiff brought this suit against Franklin County, Ohio; Dallas Baldwin, Franklin County Sheriff, in his official capacity; and Zachary Scott, the former Franklin County Sheriff, in his individual and official capacities. Plaintiff alleges that Defendants interfered with his constitutionally guaranteed right to freedom of intimate association and, because Defendants did so under color of law, are liable under 42 U.S.C. § 1983. Plaintiff requests reinstatement, back pay and actual damages, compensatory and punitive damages, attorneys' fees, and injunctive relief declaring the relevant Franklin County Sheriff's Rule of Conduct to be constitutionally vague and overbroad.

1

Plaintiff filed his Complaint (ECF No. 1) in June 2017. Defendants subsequently filed a

Motion for Summary Judgment (ECF No. 21) to which Plaintiff filed a memorandum contra

(ECF No. 26). Defendants filed a reply. (ECF No. 28). This is now ripe for review.

## B. Factual Background

Plaintiff was a probationary Sheriff's Deputy, hired on September 14, 2015. (ECF No.

20, Ex. 4). Plaintiff was given paperwork outlining the Sheriff Office's ("the Office")

employment policies, including policies concerning probationary employees. (ECF No. 20 at 27;

ECF No. 20, Ex. 8). Plaintiff was informed that his probationary period was one year, and that

"during the one year probationary period that follows the employee's hire date," a probationary

employee "can be removed from service without cause at any time." (*Id*). The Office also

maintains rules of conduct for its employees. (ECF No. 20, Ex. 32). Plaintiff received a copy of

these regulations during his training. (ECF No. 20 at 131). Two rules relevant here are AR102.19

and AR102.29. The first, AR102.19, is titled "Association with Wrong Elements," and reads in

full:

> Personnel will avoid association or dealings with persons whom they know, or
> should know, are persons under criminal investigation or indictment, or who have
> a reputation in the community or the Office for involvement in felonious or
> criminal behavior, except as necessary to the performance of official duties, or
> when unavoidable because of other personal relationships. (ECF No. 20, Ex. 32).

AR102.29 is titled "Unbecoming Conduct," and reads in full:

> Personnel will conduct themselves at all times, both on and off duty, in such a
> manner as to reflect most favorably on the Office. Unbecoming conduct will
> include that which brings the Office into disrepute or reflects discredit upon the
> individual as a member of the Office or that, which impairs the operation, or
> efficiency of the Office or the individual. (*Id*.)

On May 1, 2016, the Office received an email from Michelle Whitehall making

allegations against Plaintiff. Ms. Whitehall and Plaintiff have two kids together, one daughter

and one son, although it appears Plaintiff only knew the son was his during the events relevant here. (ECF No. 20 at 106:19-107:11). According to Defendants' Internal Affairs Investigation file, Ms. Whitehall alleged Plaintiff "had beaten her on several occasions." (ECF No. 17, Ex. 1 at 4). Ms. Whitehall said she had pictures of the marks he left. (*Id*). Ms. Whitehall also alleged Plaintiff "consumes alcohol daily and drinks and drives…and would tell stories of what he did to inmates while working at Franklin County Sheriff's Office." (*Id*.)

Following Ms. Whitehall's email, the Office opened an internal investigation. First, the Office discovered that Plaintiff had a "speed and seat belt conviction" from March 2016 which he had not disclosed to the Office. (ECF No. 17, Ex. 1 at 4). Internal Affairs interviewed Plaintiff and made multiple efforts to contact Ms. Whitehall. (*Id*.). Ms. Whitehall "chose not to cooperate" with the investigation, so "with the lack of any evidence supporting her allegations," Internal Affairs recommended the case be closed as "unfounded." (*Id*. at 6). However, Plaintiff was reprimanded for failing to report his speed and seatbelt violation. (ECF No. 20 at 43:12-22).

On August 9, 2016, officers from the Columbus Police Department (CPD) responded to a "domestic violence/assault" involving Plaintiff and Ms. Whitehall. (ECF No. 20, Ex. 2 at 3). Both parties gave statements, which agree about only certain facts from the evening. In a statement to the Office, Plaintiff said "at around 1am, I was told by my sons mother [sic] that I could come over and she would preform [sic] oral sex on me." (ECF No. 19, Ex. 2 at 6). Ms. Whitehall met Plaintiff in his car, where the two talked and drank wine; when they finished the wine, Plaintiff "drove to a nearby bar and purchased a few beers to go." (*Id*. at 3). Although Ms. Whitehall began to perform fellatio, at some point she stopped, and "an argument erupted about whether Deputy Dade's girlfriend was around their son," at which point Plaintiff asked Ms. Whitehall to get out of the car. (*Id*).

At this point, the two stories diverge: Plaintiff alleges Ms. Whitehall refused to get out of the car and instead threw a beer at him, so he dialed 911. (*Id.*). He alleges Ms. Whitehall hit him in the face and tore his shirt; that she re-entered the car "while clawing at his face"; that she placed him in a headlock and he bit her on the stomach. (*Id*). Plaintiff said that he began to walk away, leaving Ms. Whitehall in the car, but he realized his phone was still in the car, so he walked back and attempted to drive away. But while he did so, Ms. Whitehall climbed back into the car, so he stopped the car and dragged her out and on to the grass, before he eventually drove away. (*Id*).

In Ms. Whitehall's version of events, Plaintiff choked her, and she responded by hitting him. Plaintiff allegedly threw her to the ground once they were both out of the car; and when they were back in the car, Ms. Whitehall alleges Plaintiff punched her, bit her on the "belly," and pulled her out of the car. (*Id*. at 3-4).

The report from the Columbus Police Department details Ms. Whitehall's injuries to her "left eye, scratches on her left arm and left leg and a bite mark about her stomach." Plaintiff "sustained a minor cut to his nose and upper lip." (*Id*. at 4). Because there were no witnesses, CPD could not determine a "primary physical aggressor." (*Id.*). However, the Office's paperwork on CPD's report goes on to review the Ms. Whitehall's allegations from May 2016.

On August 17, 2016, Internal Affairs contacted Ms. Whitehall to seek her cooperation during the investigation. After multiple calls and voicemails, Ms. Whitehall called back, "advised she was pregnant and the incident was merely a misunderstanding."[1] A hand-written note in the file dated August 18 remarks that "Deputy Dade repeatedly has placed himself in bad

---

[1] Although there is some confusion about the chronology, Plaintiff testified in his deposition that Ms. Whitehall was not pregnant on August 9, 2016 because she had already had the baby. That baby was his daughter, though at the time he did not know he was the father. (ECF No. 20 at 110:22-23; 55:9-22; 41:4-6; 107:3-11).

situations, regarding these situations he is not meeting the expectation of this office for a Deputy

Sheriff. Recommend Probation[] [truncated by photocopy] removal." (*Id.*)

The Office's Human Resources Director, relying on the case files from Internal Affairs,

documented Plaintiff's violations of the Office's rules and regulations. (ECF No. 21 at 5; ECF

No. 18, Ex. 7). On August 19, 2016, Defendant Scott notified Plaintiff in writing that he was

being "remov[ed]…from service…for failing to comply with rules and regulations and standards

of conduct during [the] probationary period." (ECF No. 20, Ex. 27).

## II.     Standard of Review

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment

is appropriate "if the movant shows that there is no genuine issue as to any material fact and the

movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might

affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*,

20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)). The nonmoving party must then present "significant probative evidence" to show that

"there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris*

*Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is

insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d

577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a

material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting

*Anderson*, 477 U.S. at 251-52). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322 (quoting *Anderson*, 477 U.S. at 250). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

### III.    Analysis

### A.  Fundamental Rights Analysis

Plaintiff alleges Defendants violated his First and Fourteenth Amendment rights to intimate association. Specifically, Plaintiff alleges that AR102.19, which would limit his contact with Ms. Whitehall, violates his Constitutional rights because it restricts his relationship with the mother of his children. Plaintiff also argues that AR102.19 is vague on its face and therefore unconstitutional.

Whether a person's rights to intimate association are protected under the First or the Fourteenth Amendment is a question of some dispute in this Circuit, but also the threshold question for this case.

The Supreme Court has held that the choice "to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State…." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984). In the Sixth Circuit, *Roberts* was read both as anchoring this right in the First Amendment and as anchoring this right in the Fourteenth Amendment. *See Hartwell v. Houghton Lake Community Schools*, 755 Fed. Appx. 474, 477 (6th Cir. 2018) (unpublished) (collecting cases and outlining the doctrinal split). In fact, "at least one [case] looked at both. *Montgomery v. Carr,* 101 F.3d 1117, 1124 (6th Cir. 1996)." *Id*. Surveying this tangled doctrine and consulting both the Constitution as well as subsequent First and Fourteenth Amendment cases, *Hartwell* reasoned that the right to intimate association was grounded in the Fourteenth Amendment, because "*Roberts* reasoned based on principles of culture and tradition, autonomy, identity, and ordered liberty." *Id*. at 478. These principles "animate[] substantive due process analysis." *Id*. Other Sixth Circuit cases addressing workplace policies restricting relationships have similarly anchored their analysis in the Fourteenth Amendment. *See, e.g., Anderson v. City of LaVergne*, 371 F.3d 879 (6th Cir. 2004) (police department policy prohibiting employees of different ranks from dating was not a direct and substantial interference with intimate association and so was subject to, and survives, rational basis review); *Flaskamp v. Dearborn Public Schools*, 385 F.3d 935 (6th Cir. 2004) (school board's decision to deny tenure to a teacher alleged to have an intimate association with a former student within nine months of the student's graduation was not a direct and substantial interference with intimate association and so was subject to, and survives, rational basis review). Therefore, following these cases, Plaintiff's arguments will be analyzed as Fourteenth Amendment claims.

Because the intimate-association doctrine has been proceeding in parallel through the First Amendment and Fourteenth Amendment analyses, only some of the intimate-association

cases apply the familiar tiers of scrutiny. *Hartwell* observes that because First Amendment doctrine does not typically call for this tool of analysis, logically only the courts analyzing these claims under the Fourteenth Amendment would take this step. *Id*. at 478. *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 386-88 (6th Cir. 1999) (en banc). But *Hartwell*, continuing its effort to disentangle intimate-association doctrine, adds one more factor for courts to consider. As above, when courts consider intimate-association claims, they should understand these claims to be anchored in the Fourteenth Amendment, and so should "apply a tier of scrutiny to [these] cases when legitimate government interests at least partially motivate a challenged government action." *Hartwell*, 755 Fed. Appx. at 479. But occasionally courts need not embark on the tiers-of-scrutiny analysis because "there is enough evidence for a reasonable jury to find that the only motivating factor was punishment." *Id.* Therefore the threshold question for courts is whether the case at bar is a challenge to an existing policy, or whether it is a challenge to "isolated adverse actions not justified or authorized by any preexisting policy." *Id*. at 478.

Applying *Hartwell*, this Court understands this as a Fourteenth Amendment claim and, because Plaintiff challenges AR102.19, this Court will begin with the familiar tiers of scrutiny.

### 1. "Direct and Substantial"

The first question is whether the policy creates a "direct and substantial" burden on Plaintiff's right to intimate association. If it does, this Court will apply strict scrutiny; otherwise, rational basis scrutiny applies. *Mongomery*, 101 F.3d at 1124 (6th Cir. 1996) (discussing *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978)).

The test for whether there has been a "direct and substantial" burden on the right of intimate association is derived from *Zablocki* and *Loving v. Virginia*, 388 U.S. 1 (1967). In *Loving*, Virginia's anti-miscegenation statute was a "direct and substantial" burden because it

"absolutely prohibited individuals of different races from marrying." *Montgomery*, 101 F.3d at 1124. In *Zablocki*, the Wisconsin statute was a "direct and substantial" burden because the law "required non-custodial parents, who were obligated to support their minor children, to obtain court permission if they wanted to marry." *Id*. The Supreme Court noted that "even those who can be persuaded to meet the statute's requirements suffer a serious intrusion into their freedom of choice in an area in which we have held such freedom to be fundamental." *Zablocki*, 434 U.S. at 387.

The Sixth Circuit finds "direct and substantial" burdens "only where a large portion of those affected by the rule are absolutely or largely prevented from marrying, or where those affected by the rule are absolutely or largely prevented from marrying a large portion of the otherwise eligible population of spouses." *Vaughn v. Lawrenceburg Power System*, 269 F.3d 703, 710 (6th Cir. 2001). This standard develops logically from the *Loving* and *Zablocki* line of cases, where people of different races were "absolutely or largely prevented from marrying."

By this standard, Plaintiff does not face a "direct and substantial" burden on his right of intimate association. As a threshold matter, the record lacks evidence that Plaintiff contemplated marrying Ms. Whitehall. When asked to describe their relationship, he says confirms it was a romantic relationship, and then says, "We would have sex, yes. I wouldn't say along the lines of boyfriend and girlfriend, no." Plaintiff continues, saying that he and Ms. Whitehall never dated "exclusively" and that she would only stay over at his "maybe just a couple of days. Maybe one night, two nights." (ECF No. 25, 32:14-34:12). Rather, Plaintiff alleges Defendants' policy prevents him from coordinating with Ms. Whitehall to raise their children. Construing this in the light most favorable to Plaintiff, as we must at this stage of the litigation, Plaintiff nevertheless fails to describe a "direct and substantial" burden on his fundamental rights. Plaintiff responds

that, in fact, Defendants' policy fails to meet the threshold set by *Vaughn* because "he is

forbidden from associating with 100% of the persons with whom he is the parent of his infant

son, namely [Ms. Whitehall]." (ECF No. 26 at 14). But this construction of the policy fails to rise

to the absolute bar developed from the *Loving* and *Zablocki* line of cases.

Therefore this Court concludes that, in this challenge to a pre-existing policy, there is not

a "direct and substantial" burden, and so applies rational basis scrutiny.

### 2.  Rational Basis

Where a classification or distinction "neither burdens a fundamental right nor targets a

suspect class, we will uphold [it] so long as it bears a rational relation to some legitimate end."

*Romer v. Evans*, 517 U.S. 620, 631 (1996). Because there is no allegation that the Office's

polices "target[] a suspect class," the only question is whether these policies "burden[] a

fundamental right" – namely, the right to intimate association. As above, the Office's policies do

not constitute a "direct and substantial" burden on this right. Therefore, the only question for this

Court is whether the Office's policy bears a "rational relation to some legitimate end."

Defendants argue that the Office has this policy in place for several reasons. As outlined

in the "Unbecoming Conduct" provision, one purpose is to ensure that members of the Office –

being law enforcement officers empowered to enforce the will of the State against their fellow

citizens, permitted to carry and use weapons in the course of their duties, and in positions that are

difficult to check and balance effectively from the outside – are beyond reproach. Defendants

point out that these policies are in place to prevent law enforcement officers from being in

"tenuous position that might invite exploitation and discredit the department." (ECF No. 21 at

12). Defendants also assert an interest in preventing their employees from "association or

dealings with persons who have a reputation in the community or the Office for involvement in

felonious or criminal behavior" because this is "rationally related to safeguarding the public's confidence in employees of the Franklin County Sheriff." (*Id.*).

Often, when it acts as an employer, the government may require certain things or infringe certain rights that it may not otherwise require or infringe. Here, the analogy to First Amendment doctrine is proper. Justice Marshall famously wrote that that "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). Courts have consistently held that "to be rational, the basis for an employment policy…may concern general employment practices, because such practices are critical to the organization's overall functioning." *Anderson v. City of LaVergne*, 371 F.3d 879, 882 (6th Cir. 2004). *See also Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1137-39 (6th Cir. 1995) (upholding policy requiring transfer of one spouse as rationally related to legitimate government interests of avoiding potential conflicts in the workplace and preventing deterioration of workplace morale).

Here, Plaintiff's speech is not the issue, but the analogy holds. Defendants are a government agency and government employees, not acting here as the government but acting as an employer, and the policies they implement are to be reviewed accordingly. Defendants argue they have a rational basis for the policies at issue here, and because they are acting as an employer when they enforce those policies, this Court agrees. Policies that reduce the risk that employees of the Office will be extorted, discredited, or otherwise maligned are quite plainly rationally related to the goal of pushing law enforcement officers to comport themselves well, to uphold the highest standards society can set, and to be generally beyond reproach.

In addition, Plaintiff was in the probationary period of his employment, where he could be fired at will. In such circumstances, "ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation, are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable." *Akers v. McGinnis*, 352 F.3d 1030, 1036 (6th Cir. 2003).

There can be no genuine dispute that the policies of Defendants that are at issue here are rationally related to a legitimate government interest.

### 3. Parent-Child Relationship Analysis

A separate argument that Defendants are infringing on Plaintiff's right to be a parent is also unavailing. While the "parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law," *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006), that is not the case at bar. Further, although "the Supreme Court has repeatedly reaffirmed the existence of a constitutional right to the maintenance of a parent-child relationship," *id*., that is not the precise question, either. The Supreme Court has yet to delineate the bounds of "this abstract fundamental liberty interest in family integrity" which "while critically important, is neither absolute nor unqualified." *Id*. at 690. There is no genuine dispute that Plaintiff's termination was unrelated to his status as a parent or his efforts at "family integrity." The Office's policy also would not infringe on his right to be a parent or to develop a relationship with his children.

### B. Vagueness Challenge

Plaintiff also argues that Defendants' policies are unconstitutionally vague. His memorandum contra has a lengthy hypothetical on the meaning of "knowledge" – as in, "did he *know* that Ms. Whitehall was a felon within the meaning of the AR102.19." (ECF No. 26 at 16).

As a threshold matter, Plaintiff admits in his deposition that he had actual knowledge that Ms. Whitehall was a registered sex offender prior to his employment with Defendants. (ECF No. 20 at 34:16-35:9). Plaintiff's argument that "*anyone* can be indicted secretly" (ECF No. 26 at 16; emphasis in the original) also misses the point. Plaintiff does not point to evidence in the record that he was fired because he was unknowingly socializing with someone who had recently been indicted pursuant to a top-secret investigation. The actual set of events leading to Plaintiff's termination is almost the exact opposite: he continued to associate in a purely personal capacity with someone precisely described by his office's policies as being someone with whom he should avoid contact.

For these reasons, Plaintiff may not challenge AR102.19 as unconstitutionally vague. A court "should uphold the [vagueness] challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). As applied to Plaintiff, AR102.19 is not unconstitutionally vague, and the undisputed facts indicate that he engaged in "conduct that is clearly proscribed."

### C.  Qualified Immunity

Qualified immunity shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (internal quotations omitted)). In this context, "clearly established" means that "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District*

*of Columbia v. Wesby*, 583 U.S. ____, _____ (2018) (slip op., at 13) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotations omitted)). Courts must "define the 'clearly established' right at issue on the basis of the 'specific context of the case.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

However, because this Court finds there was no violation of Plaintiff's rights, the question of the Defendant's immunity is moot.

### IV.    Conclusion

For the reasons above, there remains no genuine dispute of material fact that Defendants' policies are rationally related to a legitimate government interest, and that Plaintiff was not fired in violation of statute, regulation, or the Constitution. As a result, Defendants' Motion is **GRANTED**. This case is dismissed.

  **IT IS SO ORDERED.**


           **/s/ Algenon L. Marbley**
           **ALGENON L. MARBLEY**
           **UNITED STATES DISTRICT JUDGE**

**Dated: June 10, 2019**